UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOHN AGNELLO,

        Plaintiff,

v.

        Case Number 08-14659-BC
        Honorable Thomas L. Ludington

INSTANT CASH ADVANCE
CORPORATION, JILL KURTANSKY
JOHN DURKEE, STEVEN LEACH,

        Defendants.
_____ /

**ORDER IMPOSING SANCTIONS ON PLAINTIFF'S COUNSEL PURSUANT TO RULE 11 AND DIRECTING DEFENSE COUNSEL TO PROVIDE SUPPORTING DOCUMENTATION OF ITS EXPENSES AND FEES**

On November 4, 2008, Plaintiff John Agnello filed a complaint stemming from his discharge from Defendant Instant Cash Advance ("ICA"). Defendants John Durkee and Steven Leach are the owners of Defendant ICA and Defendant Jill Kurtansky was a branch manager. Generally, Plaintiff alleges that Defendants discharged him in retaliation for providing testimony adverse to Defendants in civil proceedings. Now before the Court is Plaintiff's counsel's response [Dkt. # 25] to the Court's order to show cause why sanctions should not be imposed pursuant to Rule 11 of the Federal Rules of Civil Procedure. For the reasons stated below, the Court will impose Rule 11 sanctions on Plaintiff's counsel.

On May 18, 2009, the Court entered an order [Dkt. # 19] for Plaintiff to show cause why his complaint should not be dismissed for lack of subject matter jurisdiction. According to the second amended complaint, claims brought pursuant to §§ 1981 and 1983 established the Court's

subject-matter jurisdiction pursuant to 28 U.S.C. § 1331. However, Plaintiff's second amended complaint did not allege any race discrimination to support his § 1981 claim. While § 1981 prohibits race discrimination in the making and enforcement of contracts, it does not provide relief for a plaintiff alleging retaliation for providing adverse testimony in a civil proceeding. *See Runyon v. McCrary*, 427 U.S. 160, 167 (1976). Similarly, Plaintiff's second amended complaint did not allege that any Defendant was acting under color of state law to support his § 1983 claim. A plaintiff may only recover pursuant to § 1983 if he was deprived of a constitutional right, and "the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).

On May 26, 2009, Plaintiff filed a response [Dkt. # 21] to the order to show cause. In his response, Plaintiff did not provide a justification for pursuing his §§ 1981 and 1983 claims. Rather, Plaintiff sought to file a third amended complaint, eliminating those causes of action and including a cause of action for retaliation in violation of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601 et seq. The Court subsequently granted Plaintiff leave to file the third amended complaint because Plaintiff's allegations were sufficient to establish subject matter jurisdiction pursuant to § 1331.

However, the Court ordered Plaintiff's counsel to show cause why sanctions should not be imposed pursuant to Rule 11 based on his filing of the §§ 1981 and 1983 claims. The Court noted that Plaintiff's representations to the Court regarding the §§ 1981 and 1983 claims did not appear to have been "formed after an inquiry reasonable under the circumstances," and would not be "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2).

In his response to the Court's order to show cause, Plaintiff's counsel contends that there is a "compelling argument" that § 1981 should be extended beyond race discrimination. To support this argument, Plaintiff's counsel cites *General Building Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375 (1982). Plaintiff's counsel contends that the case stands for the proposition that the scope of protection of § 1981 should mirror the scope of protection afforded by the Fourteenth Amendment. In *General Building Contractors*, the Court discussed the purpose of § 1981 to buttress its conclusion that "§ 1981 reaches only purposeful discrimination." *Id.* at 389. The Court explained as follows:

> As noted earlier, the origins of the law can be traced to both the Civil Rights Act of 1866 and the Enforcement Act of 1870. Both of these laws, in turn, were legislative cousins of the Fourteenth Amendment. The 1866 Act represented Congress' first attempt to ensure equal rights for the freedmen following the formal abolition of slavery effected by the Thirteenth Amendment. As such, it constituted an initial blueprint of the Fourteenth Amendment, which Congress proposed in part as a means of "incorporat[ing] the guaranties of the Civil Rights Act of 1866 in the organic law of the land." *Hurd v. Hodge*, 334 U.S. 24, 32 (1948). The 1870 Act, which contained the language that now appears in § 1981, was enacted as a means of enforcing the recently ratified Fourteenth Amendment. In light of the close connection between these Acts and the Amendment, it would be incongruous to construe the principal object of their successor, § 1981, in a manner markedly different from that of the Amendment itself.

*Id.* at 389-90.

While the Court's discussion of the purpose of § 1981 supports its conclusion that the statute only reaches purposeful discrimination, Plaintiff's counsel does not explain how it supports the broader proposition that protection under § 1981 should entirely "mirror" protection under the Fourteenth Amendment. Plaintiff does not address the fact that the text of § 1981 provides: "All persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by *white* citizens. . ." (emphasis added). *See also Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006) (reiterating that the Court has "never retreated from what should be obvious from reading

the text of the statute: Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship"). Indeed, Plaintiff concedes that "Section 1981 is routinely applied to race discrimination with the apparent assumption that Section 1981 only applies to race discrimination."

With respect to the § 1983 cause of action alleged by Plaintiff, Plaintiff's counsel contends that it was the result of a typographical error. Indeed, the first amended complaint would support this view. There, count II is entitled, "violations of 1983," but the succeeding paragraphs refer solely to § 1981 and contain allegations related to contract rights. However, when Plaintiff filed a second amended complaint, without leave of the Court, Plaintiff's counsel added additional references to § 1983. Plaintiff's counsel amended the title of count II to allege "violations of Sections 1983 and 1981." Additionally, two more references to § 1983 were added to the succeeding paragraphs. It is quite difficult to conceive of these additions to the second amended complaint as typographical errors.

Based on the above, the Court finds that sanctions are warranted pursuant to Rule 11. Plaintiff's counsel has not shown that a "reasonable inquiry" was made to establish that Plaintiff's §§ 1981 and 1983 claims were"warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). Thus, Plaintiff's counsel will be ordered to pay defense counsel's reasonable expenses, including attorney fees, associated with responding to Plaintiff's §§ 1981 and 1983 claims. Such expenses and fees include those incurred in responding to Plaintiff's original, first amended, and second amended complaints. Defense counsel will be directed to file supporting documentation for

its expenses and fees. Upon review of the documentation, the Court will order the amount that Plaintiff's counsel is required to pay.

Accordingly, it is **ORDERED** that Plaintiff's counsel is **SANCTIONED** pursuant to Rule 11.

It is further **ORDERED** that defense counsel is **DIRECTED** to file supporting documentation of its expenses and fees associated with responding to Plaintiff's §§ 1981 and 1983 claims. Defense counsel shall file this information on or before **July 2, 2009**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: June 16, 2009

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on June 16, 2009.

s/Tracy A. Jacobs
TRACY A. JACOBS

---